UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ALLEN WHITE,

        Plaintiff,

vs.

MILLICENT WARREN, *et al.*,

        Defendants.

_____/

Case  No. 07-12531

Avern Cohn
United States District Judge

Michael Hluchaniuk
United States Magistrate Judge

**REPORT AND RECOMMENDATION
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Dkt. 31)**

## I.    PROCEDURAL HISTORY

Plaintiff Allan White is imprisoned at the Thumb Correctional Facility in Lapeer, Michigan.  On June 13, 2007, plaintiff filed a civil rights action pursuant to 42 U.S.C. § 1983, claiming that defendants, employees of the Michigan Department of Corrections (MDOC), conspired to retaliate against him for using the MDOC grievance process and to prevent his participation in the legal writers program.  (Dkt. 1, p. 10).  On July 16, 2007, plaintiff filed an amended complaint, in which he added various claims under Michigan's Elliott-Larsen Civil Rights Act and the Michigan Constitution.  (Dkt. 5).  This matter was referred by District Judge Avern Cohn to Magistrate Judge Charles E. Binder for all pretrial matters

on June 28, 2007, and was reassigned to the undersigned on January 14, 2008.
(Dkt. 3, 8).

On June 24, 2008, defendants filed a motion for summary judgment. (Dkt. 31). Plaintiff filed a response on August 22, 2008. (Dkt. 35). Defendants filed a reply on September 3, 2008, and plaintiff filed a sur-reply on September 24, 2008. (Dkt. 36, 37). For the reasons set forth below, the undersigned **RECOMMENDS** that defendants' motion for summary judgment be **GRANTED**.

## II.   STATEMENT OF FACTS

### A.   Plaintiff's Complaint

According to plaintiff's amended complaint, defendant McGraw, a "white Librarian," retaliated against plaintiff because he filed a grievance against her by unlawfully conspiring to have plaintiff transferred to another facility and denying plaintiff the opportunity to work as a legal writer, given that he was transferred to another facility. (Dkt. 5, p. 4). Plaintiff alleges that defendant Sergent, a "white Coordinator," colluded with the other defendants by initiating the unlawful transfer. *Id*. Plaintiff alleges that defendant Corrigan, the assistant deputy warden a Thumb correctional facility is a "white woman" and has supervisory authority over defendants McGraw and Sergent, and encouraged and participated in the unlawful conduct of the other defendants. (Dkt. 5, p. 5). Plaintiff alleges that

defendant Warren, a "white woman" was employed as the warden of the Thumb

correctional facility and failed to protect plaintiff from the unlawful conduct of the

other defendants, which had been brought to her attention by plaintiff. *Id.*

In August, 2003, plaintiff filed a grievance against defendant McGraw

based on her failure to copy legal pleadings. (Dkt. 5, p. 6). On December 14,

2003, plaintiff filed another grievance against defendant McGraw based on

retaliation for exercising his right to use the grievance process. *Id.* Plaintiff goes

on to describe four additional grievances submitted against defendants alleging

various acts of conspiracy and retaliation, all arising from his transfer to another

facility and the denial of the legal writer position. *Id.* at 6-7.

Plaintiff claims, pursuant to 28 U.S.C. § 1983, that the acts of defendants

violated his constitutional rights under the first amendment and the fourteenth

amendment equal protection clause. He also alleges conspiracies in violation of

28 U.S.C. § 1985 and supervisory claims under 28 U.S.C. § 1986. Finally,

plaintiff alleges a state law claim under the Elliott-Larsen Civil Rights Act and a

state law gross negligence claim. Plaintiff seeks money damages and attorney

fees.

B.   Defendants' Motion for Summary Judgment

Defendants argue that plaintiff's § 1985(3) claims cannot survive a motion for summary judgment. According to defendants, "[i]t is well-settled that conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under § 1983." (Dkt. 31, citing, *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987)). Without more, "mere conjecture and speculation that an agreement existed" makes a finding of a conspiracy impossible. *Id.* According to defendants, plaintiff's complaint contains no facts that would support a conspiracy claim beyond the mere fact that plaintiff is African American and defendants McGraw, Sergent, Corrigan, and Warren are white. (Dkt. 31). Defendants argue that there are no other allegations in the complaint suggesting that defendants "acted out of racial animus by their statements or actions."

Defendants also argue that plaintiff fails to sufficiently allege their personal involvement, as required by § 1983. As librarian, defendant McGraw would not have the authority to authorize plaintiff's transfer. Neither would defendant Sergent, the transfer coordinator. Defendants argue that plaintiff has no evidence that either McGraw or Sergent were part of a conspiracy based on racial animus. And, according to defendants, without a conspiracy, there is no link between

McGraw and Sergent with any prison officials who would have had the power to transfer.  Therefore, according to defendants, they cannot be held to be personally involved as required and the action should be dismissed.  Defendants argue that while defendants Corrigan and Warren, as deputy warden and warden respectively, have the authority to transfer an inmate, there are no allegations or evidence establishing a link to a conspiracy.  According to defendant Warren, plaintiff has not connected her, other than by the fact that she is the warden. Defendants argue that, as the Sixth Circuit has said, "section 1983 liability will not be imposed solely upon the basis of respondeat superior. There must be a showing that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it."  Defendant Corrigan argues that her participation is based solely on an alleged conversation with McGraw that plaintiff would be transferred out of TCF.  But, there is no evidence offered by plaintiff that this conversation was due to racial animus or retaliation for plaintiff filing grievances.  Defendants argue that plaintiff's bare allegations of conspiracy cannot sustain a cause of action where there is no showing of personal involvement by defendants.

C.    <u>Plaintiff's Response to Defendant's Motion</u>

Plaintiff argues that defendants' affidavits miss the point of his complaint. Plaintiff alleges in his complaint that all defendants had personal involvement in their individual capacities.  (Dkt. 35, p. 1).  Plaintiff also argues that merely because defendants complied with transfer procedures does not obviate their "racial animus" or the fact that they retaliated against him for filing a grievance. (Dkt. 35, p. 2).  Plaintiff also argues that his affidavit attesting to overhearing defendant McGraw's conversation with defendant Corrigan where they conspired to retaliate against him is sufficient to establish a question of fact.  (Dkt. 35, p. 2). Plaintiff further "avers and alleges that **<u>ALL</u>** Defendant(s) motivation were based on their Invidiously Discriminatory Racial Animus of plaintiff as a member of a Suspect Class."  (Dkt. 35, p. 3) (emphasis in original).

Plaintiff cites the following as "facts" that he claims defeat defendants' motion for summary judgment:

•    Defendant McGraw told plaintiff that he was a "person and class of prisoner she disliked" and that she intended to retaliate against him.  Plaintiff cites grievance TCF 03-12–01281-14z in support.

•    On December 16, 2003, plaintiff overheard defendants McGraw and Corrigan conspiring to retaliate against him based on his prior grievance and they

Report and Recommendation<br>
Motion for Summary Judgment<br>
<i>White v. Warren</i>; 07-12531

conveyed that their actions were based on a racial animus.  Plaintiff cites

grievances TCF 04-02-00171-28a and TCF 04-02-00170-17i to support his

allegations.

• Plaintiff alleges that defendant Sergent, on January 23, 2004, based

on his daily and frequent interaction with co-defendants, joined the conspiracy to

retaliate against him for seeking redress from the court and based on his racial

animus toward plaintiff.  Plaintiff relies on grievance TCF 04-03-00250-11g to

support his allegation.

• Plaintiff alleges that defendant Warren became personally involved

when she responded, on December 17, 2003, to plaintiff's December 14, 2003

letter in which he informed her that defendants Corrigan and McGraw were

overheard conspiring.  Plaintiff alleges that defendant Warren "sanctioned and

acquiesced" to their unlawful conduct, relying on TCF 04-03-00241-28a and his

December 14, 2003 memo.

D.    Defendants' Reply

In reply, defendants argue that the only evidence plaintiff offers to support

defendant Sergent's intent is his "very close relationship" with the co-defendants.

(Dkt. 36, p. 1).  Defendants also argue that plaintiff's allegation – that Sergent,

"with an explicit state of mind, formed a tacit agreement, through constructing the

1/23/04 Transfer Order" – is entirely conclusory and not evidence of a conspiracy of a deprivation of a right or privilege.  Defendants argue that plaintiff failed to produce any evidence that Sergent acted with an intent to deprive plaintiff of his rights.  (Dkt. 36, pp. 1-2).

According to defendants, plaintiff's claim that defendant Warren responded to his claims of a retaliatory transfer with a letter stating that she "had gotten personally involved by speaking with Transfer coordinator, and was told plaintiff (sic) name was not on the (TCF) transfer list a month before the 1/23/04 transfer, containing over two hundred or more prisoners seeking a transfer" is entirely false. (Dkt. 36, p. 2).  According to defendants, a review of the letter from defendant Warren reveals that she wrote no such thing, but rather, defendant Warren actually states, "This facility does not transfer prisoners unless by CFA order, or facility needs.  I have checked with the transfer coordinator and have found your allegations without merit."  *Id*.  According to defendants, plaintiff's only evidence that defendant Warren was part of a conspiracy is that she investigated his allegations of conspiracy, found them not to be credible, and authorized his transfer.  (Dkt. 36, p. 2).  Defendants, on the other hand, argue that plaintiff failed to produce any evidence that Warren acted with intent to deprive plaintiff of his rights.

Report and Recommendation
Motion for Summary Judgment
*White v. Warren*; 07-12531

Finally, defendants argue that plaintiff's allegations of "racial animus" cannot survive summary judgment.  At best, defendants argue, plaintiff can show that there was personal animosity between him and defendant McGraw.  Plaintiff claims that he was denied the legal writer position because of his race.  Defendant argues that he did not get the position because he voluntarily withdrew his name from consideration.  (Dkt. 36, p. 3).  Defendant also points out that the position was filled approximately one-month before plaintiff was transferred (Dkt. 36, Ex. B) and that an African-American was hired for the position, which shows that race did not play any role in the selection process for the legal writer position.

E.      Plaintiff's Sur-Reply

In his sur-reply, plaintiff asserts that defendant Sergent "personally chose plaintiff to be transferred even though he wasn't on the transfer list" and alleges that plaintiff was "ultimately placed in front of about two hundred other prisoners who submitted a request for transfer."  (Dkt. 37, p. 1).  Plaintiff suggests that "leaping" over 200 other prisoners when plaintiff was not on the transfer list in December 2003, when he inquired of defendant Warren, is suggestive of a conspiracy.  (Dkt. 37, p. 2).

## III.   DISCUSSION

### A.   <u>Standard of Review</u>

Summary judgment is proper where no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. <u>Fed.R.Civ.P. 56(c)</u>. In considering a motion for summary judgment, the evidence and all reasonable inferences must be construed in favor of the nonmoving party. <u>*Tanner v. County of Lenawee*, 452 F.3d 472, 477 (6th Cir. 2006)</u>. "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for [his] motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which [he] believes demonstrate the absence of a genuine issue of material fact." <u>*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)</u>. A genuine issue of material fact exists only when, assuming the truth of the non-moving party's evidence and construing all inferences from that evidence in the light most favorable to the non-moving party, there is sufficient evidence for a trier of fact to find for the non-moving party. <u>*Ciminillo v. Streicher*, 434 F.3d 461, 464 (6th Cir. 2006)</u>.

"In deciding a motion for summary judgment, [the] court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party."

*McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).  This is not to say that some credibility determinations are beyond what is appropriate in deciding a motion for summary judgment.  "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."  *Scott v. Harris*, 550 U.S. 1769, 127 S.Ct. 1774, 1776 (2007).

B.    Retaliation and Conspiracy

1.    Burden of proof.

A prisoner retains First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system.  *See Pell v. Procunier*, 417 U.S. 817, 822 (1974).  Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution.  *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999).  To establish a First Amendment retaliation claim, the plaintiff must prove that: (1) the plaintiff engaged in activities protected by the Constitution or statute; (2) the defendant took an adverse action that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) that this adverse action was taken at least in part because of the exercise of the protected conduct.  *Id*.  "[I]f a prisoner

violates a legitimate prison regulation, he is not engaged in 'protected conduct,' and cannot proceed beyond step one." *Id.* at 395.  Moreover, the plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct.  *See Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977).  If the plaintiff is able to make such a showing, the defendant then has the burden of showing that the same action would have been taken even absent the plaintiff's protected conduct.  *Id.*; *Thaddeus-X*, 175 F.3d at 399.

It is well-settled that "conspiracy claims must be pled with some degree of specificity" and that "vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under § 1983." *Gutierrez v. Lynch*, 826 F.2d 1534, 1539-40 (6th Cir. 1987), citing, *Jaco v. Bloechle*, 739 F.2d 239, 245 (6th Cir. 1984) (conspiracy claim properly dismissed where "complaint merely alleged broad conclusory negligence language void of the factual allegations necessary to support a conspiracy theory").

        2.    Transfer

A transfer another prison at the same security level is not considered sufficiently adverse to deter a person of ordinary firmness from exercising his First Amendment rights.  *Mandela v. Campbell*, 1999 WL 357825, at *3 (6th Cir.

1999).  On the other hand, a transfer to administrative segregation would be considered a sufficiently adverse action.  *See Thaddeus-X*, 175 F.3d at 396.  The transfer papers indicate that plaintiff was "swapped" for another Level II prisoner from a different facility, at the request of the other facility for a trade.  (Dkt. 31, Ex. E).  There is no suggestion or evidence that plaintiff was placed in a higher security facility, at a higher security level within another facility, or in administrative segregation.  Thus, his transfer does not support his retaliation claim.

Other than the alleged comments by McGraw that she would like to see plaintiff transferred, plaintiff offers no evidence to demonstrate that his filing of grievances played any role in his transfer, let alone a substantial role.  *See Reynolds v. Green*, 184 F.3d 589, 594 (6th Cir. 1999).  McGraw's comments do not demonstrate a causal connection between plaintiff's filing of grievances and the decision to transfer him because it is uncontroverted that McGraw was not the decisionmaker regarding the transfer.  (Dkt. 36, Ex. B).  Accordingly, her alleged statements are not evidence of a retaliatory motive.  *Smith v. Campbell*, 250 F.3d 1032, 1038 (6th Cir. 2001), citing, *Shehee v. Luttrell*, 199 F.3d 295, 301 (6th Cir. 1999) (holding that despite prisoner's allegation that prison employees instigated the loss of his commissary position, the prison employees cannot be liable on

plaintiff's retaliation claim because they were not involved in the decision to

terminate the plaintiff).

Plaintiff's attempt to tie the remaining defendants to his retaliatory transfer

claim are equally unavailing.  There is no evidence that defendant Sergent

"selected" plaintiff over 200 other eligible prisoners as plaintiff suggests.

Moreover, plaintiff's claim that defendant Sergent was part of some conspiracy

because he was "close" with defendant McGraw is not sufficient evidence to

defeat summary judgment.  Moreover, plaintiff's only evidence that defendant

Warren was part of a conspiracy is her mere knowledge that plaintiff was unhappy

about not getting the legal writer position. (Dkt. 35, pp. 28-29). This is insufficient

to establish a conspiracy.  Defendant Corrigan is alleged to have had a

conversation with defendant McGraw in which she stated that she would "see to it

that [plaintiff] would not be at the Thumb facility in order to be eligible" for the

legal writer position.  (Dkt. 31, Ex. H).  As set forth above, the position was

awarded to another inmate over a month before plaintiff was transferred. Thus,

there is no causal connection between defendant Corrigan's alleged statement and

the claimed retaliatory acts.  There is no credible evidence to support retaliation or

any conspiracy.

        3.      Legal writer job

Plaintiff also alleges that he was transferred in order to prevent him from being considered for the legal writer position.  However, plaintiff was transferred nearly a month *after* the legal writer was given to another inmate.  The undersigned fails to see a causal connection between plaintiff not getting the legal writer position and his transfer.  Moreover, a prisoner has no constitutional right to prison employment or a particular prison job.  *Newsom v. Norris*, 888 F.2d 371, 374 (6th Cir. 1989).

        3.      Racial animus.

Plaintiff also claims that he did not get the legal writer position and was transferred based on "racial animus."  Plaintiff alleges that he overheard a conversation between defendants McGraw and Corrigan suggesting that they intended to retaliate against him because of his race.  Plaintiff filed five grievances regarding the alleged retaliatory transfer and legal writer position.  He failed to mention in a single grievance or grievance appeal that his claim was based on any racial animus or that he any evidence of such animus:

    •      TCF 03-1201-2810-14z.  (Complaint, p. 16).  **Step I filed 12/14/03**.
Date of incident 12/11/03.  Grievance regarding legal writer position and that

McGraw retaliating because of prior grievance.  No mention of racial animus.  *See also* Dkt. 36, Ex. B-B; Dkt. 35, p. 31; Dkt. 31, Ex. E.

• TCF 04-0200-1710-28a.  (Complaint, p. 20).  **Step I filed 2/5/04**.  Date of incident 1/23/04 (date of transfer).  Trying to establish individual conduct of defendants.  No mention of racial animus.  *See also* Dkt. 31, Ex. H.

• TCF 04-0200-1700-17i.  (Complaint, p. 10).  **Step II filed on 2/25/04** (no legible Step I in the record).  Date of incident 1/23/04 (date of transfer).  No mention of racial animus.  *See also* Dkt. 35, pp. 33-34.

• TCF 04-0300-2410-28a.  (Complaint, p. 12).  **Step II filed 3/25/04** (no legible Step I in the record).  Date of incident 2/27/04.  Trying to establish conspiracy.  No mention of racial animus.  Rejected as duplicative of TCF 03-1201-2810-14z.  *See also* Dkt. 35, pp. 38-39.

• TCF 04-0300-2500-11g.  (Complaint, p. 14).  **Step II filed on 4/25/04** (no legible Step I in the record).  Date of incident 1/23/04 (date of transfer).  Seeking to establish that Sergent conspired with McGraw to retaliate against him for grieving her.  No mention of racial animus.  *See also* Dkt. 35, pp. 35-37.

Report and Recommendation
Motion for Summary Judgment
*White v. Warren*; 07-12531

The undersigned suggests that plaintiff's sole piece of evidence regarding racial animus (his own affidavit alleging that he "overheard" a conversation between defendants McGraw and Corrigan) is entirely lacking in any possible credibility given plaintiff's failure to mention any racial implications of this "conversation" in any of five grievances (and appeals) that he filed regarding his claims in this lawsuit.  Notably, no claim of "racial animus" is mentioned in the lengthy detailed memo to defendant Warren in which plaintiff describes the conversation he "overheard" in detail.  (Dkt. 35, pp. 28-29).

The undersigned further suggests that plaintiff's failure to file a grievance specifically claiming that he was retaliated against *based on his race* forecloses this claim because he failed to exhaust it as required by the Prisoner Litigation Reform Act (PLRA).[1]  The Supreme Court defines proper exhaustion under 42

---

[1]  While defendants did not raise this issue, the Court's authority dismiss a matter, *sua sponte*, for failure to exhaust administrative remedies is well-established.  In *Jones v. Bock*, 549 U.S. 199, 127 S.Ct. 910, 921 (2007), while the Supreme Court held that failure to exhaust is an affirmative defense, the Court also pointed out that prisoner complaints may still be subject to *sua sponte* dismissal for failure to exhaust administrative remedies.  *Deruyscher v. Michigan Dep't of Corrections Health Care*, 2007 WL 1452929, *2 (E.D. Mich. 2007), citing, *Jones*, 127 S.Ct. at 920-21; *see also Ghosh v. McClure*, 2007 WL 400648, at *6 n. 3 (S.D. Tex. 2007) ("Nothing in the Supreme Court's decision in *Jones* precludes a reviewing court from raising the issue of exhaustion *sua sponte* or dismissing the complaint without service on the defendants where the pleadings and the record confirm that a prisoner ... [failed] to exhaust his remedies before filing suit.").

Report and Recommendation
Motion for Summary Judgment
*White v. Warren*; 07-12531

U.S.C. § 1997e(a) as "using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." *Woodford v. Ngo*, 548 U.S. 81, 126 S.Ct. 2378, 2385, quoting, *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002) (emphasis in original).  Exhaustion serves a dual purpose: it gives prisoners "an effective incentive to make full use of the prison grievance process and accordingly provides prisons with a fair opportunity to correct their own errors." *Id*. at 2387-88.  Additionally, the exhaustion requirement "has the potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record." *Jones*, 127 S.Ct. at 915-16.   The court must find that the prisoner's grievance "gave prison officials fair notice of the alleged mistreatment or misconduct that forms the basis of the constitutional or statutory claim made against a defendant in a prisoner's complaint." *Bell v. Konteh*, 450 F.3d 651, 651 (6th Cir. 2006).  In this case, nothing in plaintiff's grievances would have put prison officials on notice that his claim involved racial animus.  Thus, the undersigned concludes that this claim is unexhausted and should, alternatively, be dismissed on this basis.

C.    State Law Claims

In light of the recommendations above, the undersigned also suggests that the Court decline to exercise supplemental jurisdiction over plaintiff's state law claims.  *See* *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966) ("[I]f the federal claims are dismissed before trial, ... the state claims should be dismissed as well."); *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 521 (6th Cir. 2007) ("Generally, once a federal court has dismissed a plaintiff's federal law claim, it should not reach state law claims.").  Thus, it is further recommended that plaintiff's state law claims be dismissed without prejudice.

## IV.    RECOMMENDATION

Based on the foregoing, the undersigned **RECOMMENDS** that defendants' motion for summary judgment be **GRANTED**, that plaintiff's state law claims be **DISMISSED WITHOUT PREJUDICE**, and the that remainder of plaintiff's complaint be **DISMISSED WITH PREJUDICE**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 10 days of service, as provided for in 28 U.S.C. § 636(b)(1) and Local Rule 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d

505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 10 days after service of an objection, the opposing party must file a concise response proportionate to the objections in length and complexity. The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines any objections are without merit, it may rule without awaiting the response to the objections.

Date: February 5, 2009

s/Michael Hluchaniuk
Michael Hluchaniuk
United States Magistrate Judge

## <u>CERTIFICATE OF SERVICE</u>

I certify that on <u>February 5, 2009</u>, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to the following: <u>Michael R. Dean</u>, and I certify that I have mailed by United States Postal Service the paper to the following non-ECF participants: <u>Allan White, # 127009, Boyer Road Correctional Facility, 10274 Boyer Road, Carson City, MI 48811</u>.

s/James P. Peltier

Courtroom Deputy Clerk
U.S. District Court
600 Church Street
Flint, MI 48502
(810) 341-7850
pete_peltier@mied.uscourts.gov

Report and Recommendation
Motion for Summary Judgment
*White v. Warren*; 07-12531
